STRUTHERS SCIENTIFIC AND INTER-
NATIONAL CORPORATION,
Plaintiff,

v.

GENERAL FOODS CORPORATION,
Defendant.

GENERAL FOODS CORPORATION,
Plaintiff,

v.

STRUTHERS SCIENTIFIC AND INTER-
NATIONAL CORPORATION and
Struthers Wells Corporation, Defend-
ants.

Civ. A. Nos. 3665, 3725, 3850 and 3566.

United States District Court,
D. Delaware.

Nov. 18, 1970.

See also, D.C., 314 F.Supp. 313.

E. N. Carpenter, II, and Robert H. Richards, III, of Richards, Layton & Finger, Wilmington, Del., James F. Weiler and Dudley R. Dobie, Jr., of Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., and William A. Drucker, New York City, of counsel, for Struthers Scientific and International Corp. and Struthers Wells Corp.

Arthur G. Connolly, Arthur G. Connolly, Jr. and Paul E. Crawford of Connolly, Bove & Lodge, Wilmington, Del., and Michael J. Quillinan, White Plains, N. Y., of counsel, for General Foods Corp.

## OPINION

LATCHUM, District Judge.

These four cases between Struthers Scientific and International Corporation, Struthers Wells Corporation (collectively "Struthers") and General Foods Corporation ("General Foods") raise issues of the validity and infringement of six Struthers' United States Patents.[1] The patents in suit generally relate to machinery or processes for processing coffee by wax removal, freeze concentration and freeze drying of extract to produce a freeze dried instant coffee. In addition, either by complaint or counterclaim filed in these actions, Struthers has charged (a) that it possessed trade secrets for processing coffee by freeze concentration including wax removal and freeze drying coffee extract to produce an instantly soluble coffee beverage product, (b) that certain of its trade secrets were disclosed to General Foods in confidence and (c) that General Foods misappropriated its trade secrets and

---

1. The titles of the Struthers' patents involved are: No. 3,381,302 (Freeze Concentration of Coffee Extract); No. 3,-404,007 (Freeze Dried Coffee Process and Product); No. 3,449,129 (Concentration Process); No. 3,474,723 (Beverage Apparatus); No. 3,364,126 (Floating Agitator); No. 3,495,522 (Beverage Apparatus).

used them in violation of that confidence to Struthers' detriment and damage.

These cases are presently before the Court on four interrelated discovery motions filed by the parties. General Foods has filed a motion under Rule 37(a) (2), F.R.Civ.P., to compel Struthers to file more responsive answers to General Foods' interrogatories 119 and 120. General Foods' interrogatory 119 requests Struthers to describe in detail each trade secret which Struthers has disclosed to General Foods since 1962 and to identify the person who disclosed it, to whom it was disclosed and the date and manner of disclosure.[2] Interrogatory 120 asks Struthers, on the basis of extensive information which General Foods has heretofore supplied Struthers concerning its commercial operations for making freeze dried coffee in the United States and Canada, to identify specifically each feature of General Foods' operations which Struthers contends embodies any trade secret which Struthers had previously disclosed to General Foods.[3]

Struthers has filed three motions: (1) for an order compelling certain General Foods' employees to answer questions propounded to them on oral depositions relating to the confidential information allegedly misappropriated by General Foods from Struthers, (2) for an order requiring General Foods to produce a video tape prepared in 1969 showing General Foods' Canadian process for the manufacture of freeze dried coffee, and (3) for letters rogatory to examine on oral deposition a witness in Belgium[4] and two witnesses[5] in the Federal Republic of Germany.

I. *General Foods' Motion To Compel Answers To Interrogatories 119 and 120.*

By way of background, Struthers on January 26, 1970 filed a motion to compel General Foods' employee-witnesses to answer certain questions on oral depositions dealing with Struthers' trade secrets which Struthers has alleged General Foods misappropriated. General Foods vigorously opposed this motion on the ground that Struthers had failed to specifically identify the confidential information which it allegedly disclosed to General Foods. Thus, General Foods argued that before Struthers should be allowed to discover further into General Foods' sensitive confidential information and trade secrets under the guise of seeing whether Struthers' trade secrets have been misappropriated, it should first specify in detail those trade secrets which Struthers supposedly disclosed to General Foods. At that time Struthers had not specified the trade secrets which it allegedly disclosed to General Foods. However, at argument the Court was handed an unverified copy of a document, dated March 25, 1968, the original

---

2. Interrogatory 119 reads: "Describe in detail each trade secret of Struthers Scientific and International Corporation and/or, Struthers Wells Corporation (hereinafter 'Struthers') which has been disclosed to General Foods since 1962. For each such trade secret disclosed, identify the Struthers' representatives who disclosed it, the GF representative to whom it was disclosed, and the date and manner in which it was disclosed."

3. Interrogatory 120 reads: "On the basis of the information GF has supplied Struthers concerning its commercial operations for making freeze dried coffee in the U. S. and Canada through (a) deposition testimony of more than 20 General Foods' witnesses, (b) several hundred pages of flow sheets, data sheets and operating manuals relating to General Foods' commercial operations, and (c) over 1500 pages of documents relating to said operations and the development thereof; specifically identify each and every feature of said GF operations which Struthers alleges embodies any of its trade secrets previously disclosed to General Foods and describe in detail each such trade secret allegedly used in said GF operation."

4. Mr. Russel Olsen of Brussels, Belgium.

5. Messrs. Gunther Wehrman and Heinz Heineke of Elmshorn, West Germany.

of which apparently had been filed in an action between the same parties in the Supreme Court of the State of New York, which purported to specify what Struthers' trade secrets had been disclosed to General Foods. This Court denied Struthers' Rule 37 motion on February 6, 1970 stating:

"The Court is unable pending further clarification and study of the present record to conclude that Struthers should be able to delve into plaintiff's [General Foods'] confidential industrial processes and operations without restriction on the scope of inquiry until the Court is satisfied that there has been an adequate delineation or particularization of the disclosures of the confidential information—including inventions, trade secrets, know-how and technology—that Struthers alleges were made to General Foods pursuant to a confidential relationship between the parties."

On February 10, 1970 General Foods filed its interrogatories 119 and 120. Struthers answered interrogatory 119 under oath but objected to number 120. Struthers' answer to 119 lists some 103 separate items, covering 54 typewritten legal pages, sworn to be trade secrets which it disclosed to General Foods. The answer also purports to identify the persons who made the disclosures, the persons to whom they were disclosed and the time period and means of disclosure.

In support of its motion to compel a more responsive answer to interrogatory 119, General Foods contends the present answer is a "sham" because it characterizes a "mishmash" of obviously public information as Struthers' trade secrets. General Foods says that the public character of the information has been conceded by Struthers' employees and that the compendium of information contains old information which has been completely discredited in proceedings before the United States Tariff Commission.

■■ It is true that matters alleged to be trade secrets must be secret and matters of public or general knowledge cannot be appropriated by one and claimed as his trade secrets. Of course, Struthers will have the burden at trial of proving the secrecy of its alleged trade secrets at the time of disclosure but the cases have not yet reached that point. They are still in the discovery stage with the parties attempting to define and sharpen the issues for trial. The Court is unable on the present record to determine whether the separate items of information set forth in Struthers' answer to interrogatory 119 are trade secrets, as sworn to by Struthers, or whether they consist of information in the public domain, as contended by General Foods. These are ultimate issues which cannot be resolved until after the presentation of evidence at trial. The Court cannot on any valid basis, from its own knowledge or otherwise, at this time determine whether or not the 103 separate items of information listed in the answer are bona fide trade secrets of Struthers. To rule on these questions now would require a full blown hearing on each separate item. No such burden was intended to be placed on the Court during discovery. In addition, I do not find that Struthers has ever conceded that the information was public knowledge. While the list of alleged trade secrets has been revealed to General Foods in one form or another in other litigation and to that extent may appear somewhat old and shopworn to General Foods, the present answer to interrogatory 119 is the first separate itemization which has been filed under oath in this proceeding setting out what Struthers claims to be its bona fide trade secrets. Furthermore, the Court is unable to fully understand the basis for the United States Tariff Commission's order which dismissed Struthers' complaint before the Commission and for that reason attributes to it no binding effect upon this Court.

Therefore, General Foods' motion to compel a further answer to interrogato-

ry 119 will be denied in so far as it seeks additional information or itemization of the separate trade secrets allegedly disclosed by Struthers to General Foods. The Court concludes Struthers' answer is responsive in specifying the separate items of information alleged to be trade secrets.

■ However, in addition to itemizing the separate items of alleged trade secrets, Struthers' answer to interrogatory 119 also contains a "catch-all" provision which reads as follows:

"For purposes of specificity and clarity, the information listed necessarily has been set forth as separate items. It will be recognized, however, that some disclosures are in the combinations of the various individual items into working units, and the combinations of such working units in turn into a freeze concentration operating system."

From this Struthers argues that even if some or all of Struthers' separate itemized information in its answer to interrogatory 119 may have been in the public domain, some combination or combinations of this information may be bona fide trade secrets. In support of this proposition, Struthers cites Callmar, Unfair Competition, Trademarks & Monopolies, Third Edition, Vol. 2, Sec. 52.1 at page 372 which reads:

"A trade secret can exist in the unique combination of otherwise known components; although each of its parts, by itself, may be in the public domain, the unified process, design or combination may be the essence of the secret."

While this may be true provided such a combination of commonly known elements or steps represents a valuable contribution differing materially from other methods taught by the prior art, Nickelson v. General Motors Corp., 361 F.2d 196, 199 (C.A. 7, 1966), the fact remains that Struthers has failed to identify in its answer any such "unique

combination." Its "catch-all" provision is not sufficiently specific to be responsive to interrogatory 119. If Struthers is, in fact, relying for its trade secret allegations on a unique combination of known components disclosed to General Foods, Struthers should be required to specifically describe what particular combination of components it has in mind, how these components are combined, and how they operate in a unique combination. This matter cannot be left to pure speculation and conjecture. A more definite and responsive answer to this question will undoubtedly sharpen the ultimate issues for trial of the unfair competition phases of these cases. Accordingly, General Foods' motions to compel a more responsive answer to interrogatory 119 will be granted to the extent of ordering Struthers to specifically describe the particular combinations of components it has in mind, the manner in which these components are combined and how they operate in unique combination.

■ As previously stated Struthers objects to answering interrogatory 120. During the course of Struthers' discovery into General Foods' confidential commercial enterprises between March, 1969 and February, 1970 Struthers has acquired a mass of information regarding General Foods' commercial operations in the United States and Canada. Struthers has taken the depositions of more than twenty General Foods' witnesses, has received several hundred pages of flow sheets, data sheets, and operating manuals describing General Foods' commercial operations at its Hoboken, New Jersey, Houston, Texas and Canadian plants and has had produced to it by General Foods over 1500 pages of documents relating to General Foods' operations at their plants. The interrogatory asks Struthers, on the basis of this mass of information already supplied by General Foods, to identify specifically each feature in General Foods' operations which Struthers contends em-

bodies any trade secret which Struthers had previously disclosed to General Foods. The Court finds the question to be relevant. A responsive answer will go far in clarifying and narrowing the issues in these cases.

Struthers' argument that it cannot answer interrogatory 120 without extensive additional discovery to learn what trade secrets General Foods has misappropriated from Struthers is without merit. Struthers should be able to specify if any of their trade secrets being used by General Foods are disclosed by the extensive discovery which Struthers has already had. Struthers' objections to interrogatory 120 will be overruled and General Foods' motion to compel Struthers to answer will be granted.

## II. *Struthers' Discovery Motions*

As previously noted Struthers' three pending discovery motions seek an order (1) compelling General Foods' employee-witnesses to answer questions propounded on oral depositions relating to confidential information and trade secrets allegedly misappropriated by General Foods from Struthers, (2) requiring General Foods to produce a video tape prepared in 1969 showing General Foods Canadian process for manufacturing freeze dried coffee, and (3) for letters rogatory to take the testimony on oral examination of three General Foods employees who are located in Brussels, Belgium and Elmshorn, West Germany.

■ There is no question that the parties to these cases are in a sense competitors. Struthers is in the business of selling the know-how for making freeze dried coffee to General Foods' manufacturing competitors. General Foods resists the discovery motions on the ground Struthers seeks to delve into its valuable trade secret information. Struthers argues the information sought is essential to the preparation of its cases. It becomes the Court's function to attempt to accommodate to the extent possible both parties. No absolute privilege protects trade secrets from disclosure through the discovery process. If the information sought is relevant and is clearly needed for determination of the controversy, disclosure will be required subject, of course, to appropriate protective orders.

■ General Foods does not contend that the information sought is not relevant but argues discovery should not be permitted for a number of other reasons. First, General Foods contends that, until Struthers specifically identifies the trade secrets which it allegedly disclosed to General Foods, it should not be permitted to discover into General Foods' trade secrets. The Court agrees but has already found that Struthers has partially complied with this requirement. In addition, the Court will require a further answer to interrogatory 119 by Struthers as to its "unique combination" and will require Struthers to answer interrogatory 120 before Struthers' discovery under its motions takes place.

Second, General Foods contends that Struthers' discovery is too broad, that if it describes a single bona fide trade secret it thereby acquires a "blank check" to all of General Foods' confidential information concerning its commercial freeze concentration operations. This is not so. Struthers' discovery will be limited to those specific trade secrets which it claims were disclosed to General Foods.

Third, General Foods argues that Struthers' discovery should be limited to General Foods' plants in the United States. This appears to be too limited a discovery for the unfair competition charges.

■ Fourth, General Foods contends that Struthers has shown a propensity to misuse General Foods' trade secrets already discovered. The record on this is not clear. The discovery of both parties is subject to protective orders. If

such orders are violated, the parties have their respective rights thereunder.

The Court therefore will grant Struthers' discovery motions but they will be scheduled to follow Struthers' further answers to interrogatories 119 and 120. The order also will provide that a copy of the video tape need not be produced for Struthers but must be televised by General Foods' counsel for the benefit of Struthers' counsel.

Submit an order in accordance with this opinion.